```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ROBERT J. HAGGERTY,
                         Plaintiff,              08-CV-0924-A

v.                                               **DECISION**
                                                 **And ORDER**
MICHAEL ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,
                         Defendant.
_____
```

Introduction

Plaintiff, Robert J. Haggerty ("Plaintiff" or "Haggerty") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision by the Commissioner of Social Security denying Haggerty's application for Disability Insurance Benefits ("DIB"). Haggerty applied for DIB under Title II of the Social Security Act ("the Act") for the period from May 4, 2000 to December 31, 2004, when Haggerty's insured status expired. Plaintiff asserts that the determination by the Administrative Law Judge ("ALJ")that he was not disabled is not supported by substantial evidence for four reasons: 1) the ALJ erred in evaluating Plaintiff's combination of impairments, 2)the ALJ erred in failing to recontact the consultative examiner, 3)the ALJ erred in rejecting the medical opinion of the Plaintiff's treating physician, and 4) the ALJ erred in finding the Plaintiff's testimony not credible.  The Plaintiff asserts that, for the aforementioned reasons, the ALJ's decisions should be reversed.

The Commissioner moves for judgment on the pleadings affirming his final decision that the Plaintiff is not entitled to these benefits on the grounds that the ALJ's decision followed the correct legal standards and is supported by substantial evidence in the record. For the reasons set forth hereunder, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and is in accordance with the applicable legal standards.

Background

On June 16, 2000, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") alleging disability due to bilateral shoulder impairments that caused pain and weakness in his arms. Plaintiff was born August 21, 1947. Plaintiff is a high school graduate and a licensed cosmetologist. Plaintiff worked in the cosmetology business for five years before he became owner-manager of a retail clothing store where he worked from August 1977 until August 1999. The Plaintiff had two employees, hired and fired, did the bookkeeping, ordering, and buying, waited on customers, unloaded trucks, stocked shelves, and cleaned the floor.

On January 29, 1998, Plaintiff sustained an injury to his right shoulder while working and subsequently filed a Workers' Compensation case. Plaintiff underwent arthroscopic surgery on his shoulder followed by physical therapy and was able to return to

2

full duty work by December of 1998. Plaintiff's Worker's Compensation case was closed and he was determined to have permanent schedule loss of fifteen percent of the right arm. Plaintiff never requested that his case be reopened or that his shoulder be re-evaluated.

Plaintiff stopped working in August of 1999 due to the loss of his largest supplier. Plaintiff developed pain in his left shoulder and underwent a left shoulder arthroscopy on May 4, 2000. Plaintiff received physical therapy for a brief period but discontinued treatment as he felt it was exacerbating his shoulder problems. Plaintiff never sought vocational rehabilitation nor attempted to obtain other work. Plaintiff alleges that he has been physically disabled since May 4, 2000 and has been unable to engage in substantial gainful activity as a result.

Plaintiff's application for DIB was denied initially and upon reconsideration. A timely request was filed for a hearing before an ALJ. Plaintiff appeared, with council, before ALJ Bruce Mazzarella on March 7, 2002. The ALJ determined that the Plaintiff was not disabled under the Act. This decision became final when the Appeals Council denied review on March 25, 2005. Plaintiff then commenced a civil action in the United States District Court for the Western District of New York (CV-050329). Upon review, the case was remanded with instructions for the ALJ to reconsider the opinion of Plaintiff's treating physician and to clearly articulate

the reasons and evidence which justified affording the medical opinion the weight it was given.

A new hearing was ordered and was held on June 4, 2008. The Petitioner appeared, with counsel, before ALJ Bruce Mazarella on August 18, 2008. The ALJ again found that the Plaintiff was not disabled during the relevant period. This became the final decision of the Commissioner. This action, seeking review of the Commissioner's decision, was commenced on December 17, 2008.

## Discussion

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Matthews v. Eldridge, 424 U.S. 319, 320 (1976). When considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings are supported by substantial evidence. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo).

While the court must act as "more than an uncritical rubber stamp," it must not "decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the [Commissioner]." Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986); Sitarek v. Shalala, 92-CV-641S, 1994 U.S. Dist. LEXIS 5851 (W.D.N.Y. April 21, 1994). The Commissioner's findings are not subject to reversal merely because two inconsistent conclusions could be drawn from the evidence, so long as his particular finding is supported by substantial evidence. See, e.g., NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 299-300 (1939); Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)("where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary").

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex.1983) (citation omitted). The Commissioner, who asserts that his decision was reasonable and is supported by the evidence in the record, moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings,

5

the court is convinced that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See, Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating the Plaintiff's claim.

II. Evaluation of Entitlement to Social Security Benefits

   i. Standard for Determining Disability

The ALJ, in his decision, found that Haggerty was not disabled within the meaning of the Act. The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. § 423(d)(1)(A). An individual will only be considered "under a disability" if his impairment is so severe that he is both unable to do his previous work and unable to engage in any other kind of substantial gainful work that exists in the national economy. §§ 423(d)(2)(A).

In determining if a disability exists, the ALJ is required to adhere to the following five-step sequential evaluation:

   (1)  if the claimant is performing substantial gainful work, he is not disabled;
   (2)  if the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found disabled;

(3) if the claimant is not performing substantial gainful work and has a "severe" impairment(s) that has lasted or is expected to last for a continuous period of at least 12 months, and if the impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry;
(4) if the claimant's impairment(s) do not meet or medically equal a listed impairment, the next inquiry is whether the claimant's impairment(s) prevent him from doing his past relevant work, if not, he is not disabled;
(5) if the claimant's impairment(s) prevent him from performing his past relevant work, and other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i)-(v)(2009). In following this sequential analysis, the ALJ determined that the Plaintiff was not disabled.

ii. Application of Five-Step Disability Evaluation

Under step one, the ALJ noted that the Plaintiff had not engaged in any substantial gainful work since August of 1999, when his business closed. The only income received since that time was monthly rent of $800 for the store.

Under step two, the ALJ must determine if the Plaintiff has a medical impairment, or combination of impairments that is severe. § 404.1520 (c). Under the regulations, an impairment is severe if it significantly limits an individual's ability to perform basic work activities. The ALJ noted that the Plaintiff suffered from severe bilateral shoulder pain and asthma as established by the medical records of various doctors contained in the record. The ALJ also took notice of the Plaintiff's other medical conditions,

7

such as moderate high frequency hearing loss in the left ear, gastroesophageal reflux disease (GERD), Peyronie's disease, erectile dysfunction, and prior treatment for kidney stones.

The combination of Plaintiff's bilateral shoulder pain, mild environmental asthma, and moderate hearing loss in the left ear was viewed as a severe impairment. The Plaintiff's other conditions were controllable and did not interfere with his ability to perform work activities. Impairments which can be controlled with treatment or medication do not support a finding of total disability. Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001).

Under step three, the ALJ correctly determined that the combination of these impairments did not meet or medically equal the criteria of an impairment listed in §§ 404.1520(d), 404.1525, and 404.1526. In making this determination, the ALJ specifically referred to the musculoskeletal,[1] special senses,[2] and pulmonary impairments[3] listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[1] Musculoskeletal impairments assess whether there is an inability to ambulate or to perform fine and gross movements effectively for any reason, including pain associated with an underlying condition. Id. at Sec. 1.00-1.02. Examples of inability to perform fine or gross motor skills include the inability to prepare meals, feed oneself, care for personal hygiene, sort and handle papers, etc. Id. While pain may be a factor contributing to this loss, medical findings must evince a determinable impairment that would reasonably be expected to produce the pain. Id. Plaintiff was able to feed himself, maintain his hygiene, and complete several household chores.

[2] Hearing impairment should be evaluated in terms of the person's ability to hear and distinguish speech. Id. at Sec. 2.00. Plaintiff had no reported issue with hearing or distinguishing speech; hearing loss was noted during testing.

[3] Qualifying episodic conditions, such as asthma, are described as being prolonged symptomatic episodes lasting one or more days and requiring intensive treatment. Id. at Sec. 3.00. Haggerty's asthma was mild and did not require intensive treatment to regulate his symptoms.

8

Steps four and five of the analysis are dependant on an evaluation of the Plaintiff's residual functional capacity (RFC). The ALJ determined, after an evaluation of the whole record, that Plaintiff had the RFC to perform sedentary work as defined by § 404.1567(a)[4] at the time he was last insured. Plaintiff takes issue with this RFC determination, claiming the ALJ erred in his evaluation of certain evidence (which is addressed in Point iii).

Step-four of the disability evaluation considers whether the Plaintiff could perform the requirements of his past relevant work with his impairment. § 404.1520(f). Plaintiff's past relevant work, as the owner-manager of a retail clothing store, was conducted by Plaintiff at a medium work level but is typically conducted at the light work level. § 404.1567(b),(c). As the Plaintiff's RFC only allows for sedentary work, he is no longer capable of performing past relevant work.

Finally, under step five, the ALJ was required to evaluate whether the Plaintiff was capable of performing any other work considering his current RFC and factors such as the Plaintiff's age, education, and previous work experience. For this determination, the ALJ relied on testimony from a vocational expert. A different vocational expert was used for each hearing. Both vocational experts identified several jobs which a

---

[4]This involves "lifting no more than 10 pounds at a time", usually involves sitting but may require standing or walking occasionally to carry out job duties. 20 C.F.R. § 404.1567(a).

hypothetical individual of the Plaintiff's RFC, age, education, and work skills would be able to engage in. These jobs included the following:

> Telephone solicitor DOT # 299.367-014. Sedentary work with an SVP of 3. 3400,000 jobs in national economy, 1,300 in the region.
>
> Information clerk DOT # 237.367-022. Sedentary work with an SVP of 4. 486,000 jobs in national economy, 1,644 in the region.
>
> Personnel clerk DOT # 209.362-026. Sedentary work with an SVP of 4. 100,000 jobs in national economy, 580 in the region.
>
> Payroll clerk DOT # 215.382-014. Sedentary work with an SVP of 4. 112,000 jobs in national economy, 700 in the region.
>
> Sedentary cashier DOT # 211.362-010. Sedentary work with an SVP of 5. 500,000 jobs in national economy, 6,000 in the region.

Based on the Plaintiff's ability to perform the work activities required of the aforementioned job categories, and the prevalence of those jobs in the national and regional economy, the ALJ correctly determined that the Plaintiff was not disabled.

    iii. <u>Determining Residual Functional Capacity</u>

The Plaintiff alleges that the ALJ erred in his evaluation of evidence leading to his determination of the Plaintiff's RFC. Specifically, Plaintiff asserts that the ALJ erred when he 1) failed to re-contact the consultative examiner, 2) rejected the medical opinion of Plaintiff's treating physician, and 3) found the Plaintiff's testimony to be not credible. The Plaintiff asserts

that, when this evidence is properly considered, the record does not support the ALJ's determination that the Plaintiff is not disabled.

1. <u>Duty to Re-contact Examining Physician</u>

Dr. Murli Agrawal, M.D., M.R.C.P., a consultative examiner, examined the Plaintiff and provided his findings in a written report submitted on June 3, 2002 and a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" submitted on July 16, 2002. These documents contain conflicting evaluations regarding Plaintiff's limitation in sitting, with the first report alleging no limitation and the follow up questionnaire limiting sitting to less than six hours in an eight hour day. Because of these inconsistencies, the ALJ disregarded the medical opinion of Dr. Agrawal. The Plaintiff asserts that the ALJ had an affirmative duty to re-contact the state consultative examiner to obtain clarification of these inconsistencies and that failure to do so constitutes reversible error. However, the record indicates that the ALJ did in fact attempt to contact Dr. Agrawal via letter on January 28, 2003. While no clarification was received from Dr. Agrawal, the ALJ did manage to compile an extensive medical history of the Plaintiff from records of various other physicians relating to the relevant period.

Furthermore, the ALJ acted in accordance with regulations regarding the development of the record and the evaluation of medical evidence. Before making a determination, the ALJ is

required to develop the Plaintiff's complete medical history and make every reasonable effort to help obtain medical records. § 404.1545(a)(3). If a medical opinion is internally inconsistent or inconsistent with other evidence presented, the ALJ must weigh the evidence as a whole and determine if a decision can be made based on the available evidence. § 404.1527(c)(2). The ALJ does not have an affirmative duty to re-contact a physician if there is adequate evidence in the record to make a determination. Shepherd v. Astrue, CV. 09-6022-PK, 2010 U.S. Dist. LEXIS 22321 *22 (D. Or. Jan. 25, 2010); See also Catanzaro v. Comm'r of Soc. Sec., 08-CV-389A, 2009 U.S. Dist. LEXIS 124240 (W.D.N.Y June 30, 2009). The regulations further state that there is no duty to re-contact where the ALJ knows from past experience that the source either cannot or will not provide the necessary findings. § 404.1512(e)(2).

In response to his January 2003 letter to Dr. Agrawal, the ALJ was informed by Karen Clark, Medical Relations Assistant for the Division of Disability, that Dr. Agrawal was no longer available. The record already contained an extensive medical history, including medical opinions from various doctors. These reports provided the ALJ with adequate evidence on which to base his opinion. As Dr. Agrawal was not the Plaintiff's treating physician and the medical record was already well documented, the ALJ had no duty to obtain further clarification from Dr. Agrawal.

12

2. <u>Evaluating Treating Physician's Medical Opinion</u>

The opinion of a treating physician is controlling only if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other substantial evidence in the record. § 404.1527(d)(2); <u>See</u> <u>Schisler v. Heckler</u>, 787 F.2d 76, 81 (2d Cir. 1986). This is because a treating physician generally has observed the patient over a long period of time and can give a detailed medical history. <u>Salisbury v. Astrue</u>, 06-CV-6629L, 2008 U.S. Dist. LEXIS 97618 * 10 (W.D.N.Y. Dec. 2, 2008). When deciding whether to give a treating physician controlling weight, the ALJ must consider (1) whether a treatment relationship exists; (2) the length and nature of the treatment relationship; (3) the support for the opinion from medical and laboratory findings; (4) the consistency with the record as a whole; (5) specialization of the treating physician; and (6) other evidence that supports or contradicts the opinion. <u>Id</u>. The ALJ must also provide an explanation supporting his determination. § 404.1527(d)(2).

On initial appeal, this case was remanded due to the ALJ's failure to articulate his reasoning, and the supporting evidence, for discounting the opinion of Plaintiff's treating physician, Dr. Paul Lapoint. On remand, the ALJ has further developed the record by requesting additional medical records from Dr. Lapoint as well as Plaintiff's subsequent physicians. The ALJ again gave little weight to Dr. Lapoint's medical opinion but stated his reasons for doing so.

The ALJ notes that Dr. Lapoint began seeing Plaintiff in July of 1998, performed both of his shoulder surgeries, and continued to see the Plaintiff through March 2002. While this treatment relationship lasted for a significant time, the ALJ found Lapoint's RFC report, dated December 10, 2001, to a repetition of what the claimant told the doctor. This RFC report listed several limitations reported by the Plaintiff regarding lifting over five pounds, length of time Plaintiff could stand or walk, and the number of required rest periods. These limitations were not mentioned in Lapoint's July 9, 2001 note, which states that Plaintiff had pain with heavy activities and an inability to do strenuous work with the left shoulder. Trial Record (T.) at 774-75. In this same visit, Lapoint noted that the right shoulder had improved and that, while there was still some impingement, overall function appeared reasonable. Id. Lapoint also noted during this visit that Plaintiff's goal was disability. Various x-rays of Plaintiff's shoulders show adequate decompression post-surgery and no significant arthritis. T. at 776, 782.

In a March 20, 2002 report, Lapoint deferred a RFC assessment as he felt unable to evaluate the Plaintiff's "true functional levels" and recommended a Functional Capacity Examination to evaluate Haggerty's ability to work. T. at 427. In this assessment, performed on April 17, 2002, Plaintiff demonstrated the retained ability to perform sedentary work. T. at 432-44. The ALJ notes that this test does not constitute "medical evidence" but

14

found it noteworthy that Plaintiff's treating physician deferred to this test. This functional capacity exam is consistent with Lapoint's post surgery remarks regarding restrictions on strenuous activity, the normal x-ray results, and the consulting physicians findings of no atrophy and 5/5 strength. T. at 743. Taken together, these medical findings objective medical evidence support the ALJ's decision to give great weight to the opinion of the consulting physician and less weight to the opinion of the treating physician, Dr. Lapoint.

The opinion of consulting physician Dr. Toor, T. at 742-51, Dr. Lapoint's post-operative exam notes, the recommended Functional Capacity Exam, and X-ray results, provide substantial evidence to support the ALJ's determinations that Plaintiff had an RFC allowing for sedentary work and was not disabled.

3. <u>Evaluating Credibility of Plaintiff's Statements</u>

Symptoms, such as pain, can suggest a greater severity of limitation than can be shown with objective medical evidence alone. SSR 96-7P. Statements about these symptoms must be carefully considered along with the record as a whole in making a disability determination. <u>Id</u>. First, the ALJ must determine if an underlying impairment exists that could reasonably be expected to produce the symptoms complained of. <u>Id</u>. In this case, the ALJ determined that Plaintiff's bilateral shoulder impairments could reasonably produce pain as was reported. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the

15

extent to which the symptoms limit the Plaintiff's ability to do work activities. Id. When making this determination, the ALJ must assess the credibility of the Plaintiff's statements by evaluating the following factors:

> (1) The individual's daily activities;
> (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> (3) Factors that precipitate and aggravate the symptoms;
> (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or symptoms;
> (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7P.

In this case, the ALJ assessed these various factors and determined that the Plaintiff's reports as to the intensity, persistence, and limiting effects of his pain were not credible. The ALJ noted that the Plaintiff did have a good work record, which generally raises a favorable inference, but this was outweighed by other evidence. The record reflects that, while Plaintiff reports the majority of his day is spent watching tv, he has continued to engage in various daily activities. Plaintiff has maintained his drivers license and drove himself two hours to his hearing without stopping. T. at 832-33. He reported that he washes and folds laundry, loads and unloads the dishwasher, and pays the bills on

16

the computer a couple times a week. T. at 851-52. Plaintiff was released back to work after his first surgery, with no limitations, on December 7, 1998. T. at 31. This work ended when Plaintiff's business closed due to the loss of a main supplier, not due to his impairment. T. at 52. After his business closed, Plaintiff neither sought work elsewhere nor attempted vocational rehabilitation. T. at 53-54, 59. Shortly after his second surgery on May 4, 2000, Plaintiff informed his treating physician that his goal was disability. The ALJ notes that while such a quick determination to seek disability is not rare, the fact that Plaintiff stated that disability was his goal does not help bolster his credibility. T. at 774-75.

Plaintiff's reported pain which was constant in nature and increased to the point that Plaintiff needed to lie down for hours to recover after doing very little. According to the Plaintiff, even the weight of his arms while walking or the act of writing with his arms resting on a desk was enough to cause this level of pain. T. at 855-87. The ALJ found that the severity of these claims was not supported by medical or laboratory results as Plaintiff's shoulder x-rays showed normal results, appropriate decompression, and there were no signs of new injury, swelling, or arthritis. The ALJ noted that there is no underlying impairment which should impact the use of Plaintiff's hands.

The ALJ further noted that the Plaintiff had not sought treatment for his shoulders since 2002, when he last saw

17

Dr. Lapoint. The ALJ found this lack of treatment inconsistent with someone who suffered from the severely limiting pain alleged by the Plaintiff. Plaintiff had undergone physical therapy for neck pain in 2007 and did not complain of or seek treatment for any shoulder pain at that time. At the time of the first hearing, the Plaintiff was prescribed Vioxx, which was taken once a day to help with pain. Patient stopped taking Vioxx sometime prior to February of 2006, T. at 741, and has since relied on Extra Strength Tylenol and rest to manage his pain. T. at 850-51. This lack of treatment or medication was found to be incredible in light of the severity of Plaintiff's alleged pain and impairment.

The ALJ's conclusion that Plaintiff's testimony was not credible is supported by Plaintiff's overall daily functioning, the lack of supporting medical evidence, Plaintiff's lack of medical treatment, and his use of only over-the-counter pain medication. These reasons for the ALJ's determination are stated in his opinion.

The ALJ clearly articulated, as required, his reasons for discounting the medical opinion of Plaintiff's treating physician and for finding the Plaintiff's testimony not credible. These determinations were made in accordance with the applicable regulations and were supported by substantial evidence in the record. As the record contains substantial evidence in support of the ALJ's determination that the Plaintiff was not disabled, this determination is hereby affirmed.

## Conclusion

For the reasons set forth above, I grant the Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
June 23, 2010